(77 South. 375)

MANSON v. SUTTERER. (6 Div. 575.)

(Supreme Court of Alabama. Dec. 20, 1917.)

1. BILLS AND NOTES &#8658;537(8)—PAYMENT TO AGENT—QUESTION FOR JURY.

In an action on a note, defendant insisting he had paid it to the payee bank before plaintiff acquired it, and that the payee was at the time the agent, with authority to collect the note, of another bank with which the note had been pledged as collateral, such issue *held* for the jury.

2. APPEAL AND ERROR &#8658;1040(15) — HARMLESS ERROR—OVERRULING DEMURRER TO REJOINDER.

In an action on a note, though defendant's rejoinder contained a plea of payment which had been interposed, the overruling of the demurrer to the rejoinder on that ground was harmless to plaintiff.

3. APPEAL AND ERROR &#8658;655(2)—BILL OF EXCEPTIONS—EVIDENCE OF WITNESS IN NARRATIVE FORM—TESTIMONY BY DEPOSITION.

Motion to strike the bill of exceptions on the ground that it contained questions and answers of witnesses, and did not contain their evidence in narrative form, is without merit, where the testimony of the witnesses was obtained by taking their depositions.

Anderson, C. J., and Somerville and Gardner, JJ., dissenting.

---

Appeal from Circuit Court, Cullman County; R. C. Brickell, Judge.

Suit by H. T. Manson against John F. Sutterer. From a judgment for defendant, plaintiff appeals. Judgment affirmed.

Motion was made to strike the bill of exceptions on the ground that it contained questions and answers of witnesses Manson and Turnbull, and did not contain their evidence in narrative form. The testimony of these witnesses was obtained by taking their depositions. Another ground was that the bill contained two bills of sale which were the same.

Suit by appellant against appellee on a negotiable promissory note executed by the appellee to the German Bank of Cullman for $1,000, bearing date February 3, 1914, and due November 3, 1914, payable at the German Bank of Cullman, Ala. Said note was presented as collateral security to the Hanover National Bank by the German Bank of Cullman on or about February 16, 1914, to secure notes executed for loans of money, which note was duly indorsed on the back by the German Bank of Cullman. The notes of the German Bank of Cullman to the Hanover National Bank provided that in case of default in the payment thereof the collateral placed as security therefor and held by the Hanover National Bank, which includes the note here in question, should be sold at public or private sale upon such terms as the bank may determine, without notice to the maker of the note. Default having been made by the German Bank of Cullman, the Hanover National Bank sold the notes which had been placed with it as collateral security, including the one in question, at a public sale after due advertisement thereof, and at such sale the appellant (plaintiff in the court below) became the purchaser, and the Hanover National Bank executed to the plaintiff a written transfer and assignment of the note in question, with all the notes sold at said sale, the same bearing date April 21, 1915.

It was insisted by defendant that the note was fully paid on the day it was due by him to the German Bank of Cullman, but the bank did not surrender the note at the time, not having it in its possession, and the defendant further insists that the German Bank of Cullman was the authorized agent of the Hanover National Bank at that time to collect said note, although it was held as collateral by the Hanover National Bank in New York.

Plaintiff insists that he was a purchaser in due course from the Hanover National Bank, which said bank was a bona fide holder for value, and that plaintiff had no notice of any illegality or fraud, and had himself been guilty of no irregularity, and, further, that the German Bank of Cullman was not the agent of the Hanover National Bank in the collection of this collateral at the time the same was paid.

The defendant filed a rejoinder numbered 3 to some of plaintiff's replications, which was to the effect that the note sued on had been paid by defendant to the German Bank of Cullman, the duly authorized agent of the Hanover National Bank, before the note was acquired by the plaintiff. Plaintiff demurred to this rejoinder upon the ground that it was a plea of payment of which the defendant already had the benefit in other pleas. The demurrer was overruled. The defendant also filed a plea No. 11 to the effect that the plaintiff was not the owner of the note.

The above-stated facts as to the purchase of the note by the plaintiff and transfer thereof to him by the Hanover National Bank, and that he therefore had the legal title, were not disputed, but the defendant insisted that the evidence tended to show that the bank was in fact interested in the proceeds of this litigation, and was the party beneficially interested. This issue as to the ownership of the note was permitted to go to the jury for their determination by the trial court in his oral charge, and charges of the plaintiff requested in writing for affirmative instructions in favor of the plaintiff as to this issue, and as against plea No. 11, were refused.

Several letters found in the drawers of some of the desks of the German Bank of Cullman, written by the Hanover National Bank to the German Bank of Cullman, were introduced in evidence. These letters were in regard to the conditions of the account of said bank, and the unsatisfactory collateral held. The plaintiff insisted that if the German Bank of Cullman had authority, as testified to by witnesses for the defendant, to collect these collaterals for it, that authority was revoked by a letter of October 7, 1914, in which the Hanover National Bank declined to send to the German Bank of Cullman certain collateral notes which the latter had requested to be forwarded, and in which the following language is used:

"You must appreciate that matters cannot continue in their present unsatisfactory shape, and unless you are disposed to meet our reasonable requests, we may have to collect our collateral through other channels."

The evidence for defendant tended to show that during a period of 9 or 10 years, which time the German Bank of Cullman had been doing business with the Hanover National Bank, it had been customary for the German Bank of Cullman to collect collateral which they had placed with the Hanover National Bank, and to remit the proceeds to the latter bank, and that the German Bank of Cullman was authorized to do this, and was the agent of said Hanover National Bank; that this course of business had been continued for all these years with the knowledge of the Hanover National Bank.

The cause was submitted to the jury upon the issue as to whether or not the plaintiff was the owner of the note, and the payment

of the same to the German Bank of Cullman, and as to whether or not the said German Bank of Cullman was at the time the agent of the Hanover National Bank, and authorized to receive the same, and as to whether or not any authority the German Bank of Cullman had ever had had been revoked by the letter above referred to, if the jury find that the letter was received by the German Bank of Cullman.

There was a verdict for the defendant, and from the judgment following the plaintiff prosecutes this appeal.

George H. Parker, of Cullman, and Eyster & Eyster, of Albany, for appellant. Emil Ahlrichs and A. A. Griffith, both of Cullman, for appellee.

GARDNER, J. Among other defenses interposed, the defendant pleaded that plaintiff was not the owner of the note sued upon, and this was one of the issues presented to the jury for determination. This plea put in issue the genuineness of the indorsement of the note to the plaintiff. The plea of payment bore no relation to this plea. Agee v. Medlock, 25 Ala. 281. The plaintiff requested, in writing, affirmative instructions with proper hypothesis upon this issue, and the refusal of these charges is assigned as error. The evidence was without dispute that the note in question had been duly indorsed 'and delivered by the payee, the German Bank of Cullman, to the Hanover National Bank, as collateral security, and by the latter bank duly sold as authorized by the payee, and properly transferred to the plaintiff, and that plaintiff therefore held the legal title to said note at the time of the institution of this suit. The insistence of defendant seems to be that some of the evidence tends to show that the Hanover National Bank is, in fact, the beneficial owner of the note, interested in the proceeds thereof, although the legal title may be in the plaintiff.

The note here sued upon is a commercial paper, and comes within that provision of section 2489, Code 1907, requiring suits on such instruments to "be instituted" in the name of the person having "legal title." As said by this court, speaking to this provision of the statute above cited:

" 'The legal title' to such an obligation as is here declared on is a distinct concept from the right to the proceeds thereof. One may be the holder of the 'legal title,' though the proceeds belong to another." Coats v. Mutual Alliance Trust Co., 174 Ala. 565, 56 South. 915.

To like effect, see Carmelich v. Mims, 88 Ala. 335, 6 South. 913; Berney v. Steiner Bros., 108 Ala. 111, 19 South. 806, 54 Am. St. Rep. 172.

Under the undisputed evidence in the case, therefore, the plaintiff was entitled to the affirmative charge with hypothesis as requested as to this issue which was set up by plea No. 11. The record discloses, as is also indicated by brief of counsel for appellee, that this was an issue vigorously contested in the court below before the jury, and very probably had a strong influence with it. Under the evidence, this issue, in the opinion of the writer, should have been eliminated from the jury's consideration. Under Agee v. Medlock, supra, this plea put in issue only the genuineness of the indorsement of the note to the plaintiff, and the plea of payment bore no relation to this plea, and could not in any event be held in any way to embrace the substance of plea No. 11. I am therefore unable to agree to the opinion of Justice McCLELLAN, and think that the cause should be reversed for the refusal of the affirmative charge as to plea No. 11, and thus have removed that issue from the case.

The plaintiff filed a general replication to defendant's pleas, expressly averring that the "facts set up in said pleas are untrue, and he takes issue upon the same." Not only was this true, but each of the replications expressly averred the ownership of the note in the plaintiff; that plaintiff "became the holder in due course." To say that under this situation the plaintiff should, under the rule given application by Justice MAYFIELD, be said to have confessed that he was not the owner of the note, is, in my opinion, extending the technical rule of pleading therein mentioned far beyond its legitimate scope, and is entirely too finely drawn for practical purposes. I am therefore unable to agree with the conclusion reached by Justice MAYFIELD as disclosed by his separate opinion.

In these views Chief Justice ANDERSON and Justice SOMERVILLE concur, and entertain the view that the cause should be reversed. Upon the other questions herein discussed there is no difference of opinion.

[1] The defendant insisted that he had paid the note to the German Bank of Cullman long prior to the time when the plaintiff acquired the same, and that the German Bank of Cullman was at that time the agent of the Hanover National Bank, with authority to collect the note. The evidence upon this issue was somewhat similar to that presented in the case of Vogler v. Manson, 76 South. 117[1]—a suit growing out of the same bank failure—and we think the same was sufficient for submission to the jury upon this issue.

[2] As to whether or not the authority to collect the collateral was revoked by the Hanover National Bank in the letter of October 3d (referred to in the statement of the case), was left by the court to the determination of the jury, and upon a consideration of the same we are not persuaded that the plaintiff can complain of the refusal of the court to affirmatively instruct the jury that such letter did in fact revoke such authority. Nor do we find anything in the ruling of the court on demurrer to rejoinder No. 3, calling for a reversal of the cause. The only assignment of demurrer insisted upon is that the rejoinder contained a plea of

[1] 200 Ala. 351.

payment which had been interposed, and, whether this was true or not, clearly the overruling of this assignment of demurrer could not possibly have injuriously affected the plaintiff.

[3] The motion to strike the bill of exceptions has been duly considered, and we are persuaded it is without merit, nor do we think it needs separate treatment here. The motion is accordingly denied.

It results from the views of the majority that the judgment must affirmed.

Affirmed.

McCLELLAN, MAYFIELD, SAYRE, and THOMAS, JJ., concur in result of affirmance. ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., dissent.

McCLELLAN, J. The Hanover National Bank was the holder of the defendant's (appellee's) note, sued on by Manson, the plaintiff, under an assignment thereof by the payee, the German Bank, to the Hanover National Bank, effectuated many months before the maturity of the note. Subsequent to the maturity of this note, it was sold by the Hanover National Bank in enforcement of that bank's rights to dispose of this note, along with other collateral, to gain proceeds to apply to the payment, pro tanto, of the German Bank's indebtedness to the Hanover National Bank. The note in suit was due November 3, 1914, bore date February 3, 1914, and was transferred to the Hanover National Bank on the ———— day of ————, 1914, before its maturity.

The defendant asserted in his pleading, and offered evidence tending to support, this defense: That on October 29, 1914, he paid $650 to the German Bank, as the authorized agent of the Hanover National Bank, in partial payment of the note sued on, and that on November 3, 1914—the date of the maturity of this note—he likewise paid the balance due on the note, viz. $350, taking receipts for these payments, the latter of which showed that the payment then made satisfied the balance due on this note. At the time these payments were made, the German Bank did not have this note in its possession, and it was not delivered to defendant or any one for him. The note was in the possession of the transferee, the holder, Hanover National Bank. If the full payments thus made were made to the German Bank as the authorized agent of the Hanover National Bank to accept payment of this note—an issue of fact, under the whole evidence, which was due to be and was submitted by the trial court to the jury for decision—then the contract, the obligation evidenced by this note was completely extinguished at its maturity. Where a negotiable instrument is paid to the holder at maturity by the maker, "the liability of all the parties thereto is discharged, the paper is dead, and the contract evidenced thereby is entirely extinguished." Code, § 5068, subdiv. 1; 3 R. C. L. p. 1272; Mabry v. Matheny, 10 Smedes & M. 323, 48 Am. Dec. 753, 754. The reissue, subsequent to maturity, of a negotiable instrument, after its obligation has been extinguished by payment by the maker to the holder, at its maturity, will subject the party reissuing it to a liability, but the maker's liability thereon is not revived unless the maker acquiesces in or consents to the reissue of the instrument. 3 R. C. L. p. 1272; 2 Daniel's Neg. Instr. § 1238; Mabry v. Matheny, supra; Cochran v. Wheeler, 7 N. H. 202, 26 Am. Dec. 732; note, 11 Am. Dec. p. 66.

In purchasing the note, subsequent to its due date, at the foreclosure sale of it, along with other collateral transferred by the German Bank to the Hanover National Bank, Manson, the plaintiff, took this note subject to whatever defenses the maker then had against the Hanover National Bank. Code, § 5013 (Uniform Neg. Instr. Act), wherein it is provided:

"But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality, has all the rights of such latter."

While this plaintiff became clothed—by the assignment to him of the defendant's note several months subsequent to its maturity—with authority to sue thereon in his own name, yet this plaintiff's rights in the premises were only such as the Hanover National Bank had at the time of the sale of this, along with other, collateral. If the note was fully paid at maturity to an authorized agent of the Hanover National Bank, the contract was extinguished, and this plaintiff could not recover.

Plea 11, as amended, asserted that the plaintiff was not the owner of the note. According to the authority afforded by Agee v. Medlock, 25 Ala. 281, that plea only put in issue the genuineness of the indorsement. There was a general plea of payment in the Code form. Code, vol. 2, p. 1202, form 35. The plaintiff replied that he purchased the note at the foreclosure sale of the collateral, and that it had not been paid. The defendant rejoined (rejoinder numbered 3) to this effect: That the note sued on "was paid by the defendant to the German Bank, the duly authorized agent of said Hanover National Bank, before said note was acquired by the plaintiff." It was ruled, in effect, in Vogler v. Manson, 76 South. 117,[2] that evidence of payment of the note at any time was admissible under the general plea of payment (in Code form) already interposed when the third rejoinder was filed, and, if so, no prejudice to the plaintiff resulted from the court's action in overruling the plaintiff's demurrer to the quoted rejoinder. In the state of the averments of the pleading in both the Vogler and this case, at the stage when the substance of the quoted rejoinder was introduced, it may be assumed that no harm to

[2] 200 Ala. 351.

any of the parties could or did result from the action of the court in retaining the third rejoinder, notwithstanding demurrer, in the list of issue-tendering pleadings in the cause, though reference to considerations controlling the decision in Barbour v. Washington Ins. Co., 60 Ala. 433, might, under other circumstances, induce conclusions in partial qualification of the assertion that, under a plea of payment in the Code form, payment at any time would be admissible, especially if the payment relied on by the defendant was made at maturity by the maker, extinguishing the obligation of the contract (3 R. C. L. p. 1272), and the note was subsequently assigned by the holder who received the payment at maturity to one who thereby became invested with no better right than his assignor had.

The court refused to give these specially requested instructions:

"B. Under the evidence in this case if you believe the same, I charge you that the plaintiff Manson is the owner of the note sued on."

"E. I charge you gentlemen of the jury that if you believe the evidence in this case the defendant has failed to establish his plea No. 11 as amended, to wit, that the plaintiff is not the owner of the note sued on."

"Z. If you believe the evidence I charge you plaintiff is the owner of the note sued on."

The requests were calculated to mislead the jury, and were, for that reason, well refused. They conclude that the plaintiff was the owner of the note. If the note was effectually paid by the maker, at maturity, to the German Bank as the authorized agent of the Hanover National Bank, the holder in due course, then the plaintiff, through the note's subsequent assignment, took nothing, was the owner of nothing, except the right to sue on the note in his own name, because the obligation of the contract had been, theretofore, at maturity, extinguished. To unqualifiedly advise the jury that the plaintiff was the owner of the note—regardless of the conclusion upon the issue of fact stated—was at least likely to impress the jury with the erroneous idea that, notwithstanding the obligation of the note may have been extinguished by its payment at maturity still the plaintiff owned the note; that the note was capable of ownership. Special requests for instructions to juries may be refused without error if they are not clear and certain, or if they require explanation, or if they are so doubtful in meaning as to appear to need explanation of them that misunderstanding of them may be avoided. No such rules pertain to pleadings. The fact that this court in Agee v. Medlock, 25 Ala. 281, construed the term owner in a plea as only denying the genuineness of the indorsement of the note sued on is not an authority for so interpreting the word owner in the quoted special requests for instructions to the end that error of the trial court in refusing such requests may be pronounced. On appeal all reasonable intendments are resolved in favor of, not against, the correctness of the action and judgment of the trial court.

I cannot, therefore, concur in affirming error of the trial court in refusing the special charges quoted above.

MAYFIELD, J. If the issues of payment and ownership had been distinct and separate each from the other, I would agree with Justice GARDNER that plaintiff was entitled to have the jury instructed that, if they believed the evidence, he was the owner of the note on which the suit was brought. The instructions set out in Justice McCLELLAN'S opinion, and which were refused to plaintiff, in legal effect hypothesized every fact set up in plea 11 which denied ownership. They were each in legal effect an instruction to find for plaintiff on the issue of ownership. It is a well-recognized practice in this state to give such charges as to a particular count, plea, replication, etc., when there is no dispute or conflict in the evidence, although there are other issues as to which such charges cannot be given.

The issues were, however, confessed by the fault of the plaintiff, and hence the charges on that account might tend to confuse or mislead the jury, and, for that reason, were properly refused, as stated by Justice McCLELLAN. The confusion of issues was thus brought about by plaintiff.

The defendant had filed more than a dozen pleas, each raising separate and distinct issues; one of which was payment, and another ownership. To these pleas plaintiff filed the general and several special replications, without specifying as to which of the pleas any special replication was addressed. Construing these special replications against the pleader at fault, as we must do, they confessed and avoided the plea denying ownership.

No doubt the replications were intended as replies to the plea of payment, and not to that of ownership, because appropriate to the one but not to the other; but we are controlled by the record proper in this respect, and it shows the issues as we have above stated them. We are not allowed to indulge presumptions or intendments against the record, even to support the rulings of the trial court on pleadings, much less can we do so if thereby we reverse the rulings and judgment of the lower court.

The plaintiff having filed special replications to the plea denying his ownership, he thereby, so far as the issue was raised by the special replications, conclusively confessed the plea which denied his ownership. His general replication, of course, denied the plea and put the ownership in issue, and hence, for all purposes or all issues, he had not confessed, and under this issue ownership of the note could be proven or disproven; but not so as to the issues raised by the special replications; as to these issues the plaintiff

confessed the plea—this he had to do before he could avoid the plea. The fact that in the special replications he also asserted ownership does not change the rule; if it be a special replication, it must confess and avoid, or set up an estoppel. The plaintiff himself having treated it as a special replication in attempting to avoid the plea, he must under the rules of pleading be held to have confessed the plea denying ownership. Having thus confessed that he was not the owner, as to this issue he had no right to an instruction that he was the owner.. This is well settled by our statutes and decisions.

"The plaintiff may file more than one replication without unnecessary repetition. The general replication is, 'The plaintiff joins issue on such plea.' A special replication is a brief statement, in plain language, of the facts relied on as an answer to the plea." Code, § 5338.

The question is fully discussed and expressly decided in the case of Lee v. De Bardeleben Co., 102 Ala. 628, 630, 15 South. 270, where it is said:

"If plaintiff had joined issue upon the defendant's plea of contributory negligence, the burden then would have devolved upon the defendant to make good this plea. Bromley v. Birmingham Min. R. R. Co., 95 Ala. 397 [11 South. 341]. Instead of joining issue the plaintiff replied specially. A replication must either traverse or confess and avoid the matter pleaded, or present matter of estoppel. Winter v. Mobile Savings Bank, 54 Ala. 172. A general replication is a joinder in issue on the plea. 'A special replication is a brief statement in plain language of the facts relied on as an answer to the plea.' Code, § 2688. The defendant is not required to offer evidence in support of facts averred in the plea, which are confessed in the replication to the plea. In the case of Dockery v. Day, 7 Porter, 518, the plaintiff declared upon a promissory note to which the defendant pleaded infancy. The plaintiff replied a subsequent promise. This court held that the introduction of the note by the plaintiff did not authorize a recovery; that in addition, he must prove a subsequent promise, as averred in his replication, and that the defendant was not required to prove the facts admitted in the replication. The principle is recognized in the case of Coster v. Brack, 19 Ala. 210."

We may have inconsistent issues in our pleadings, but it must be done by separate pleas, replications, etc., and each issue is referred to its own relative pleading, and is not aided or defeated by other pleadings.

"While it is a general rule of law that a party will not be allowed to deny what he has affirmed of record in his plea, and that parties are bound by their pleadings, yet this rule does not extend to the limit of allowing one of several pleas in the same cause of action to prove or disprove another inconsistent plea. Our statute allows such inconsistent pleas, and to invoke the rule would defeat the object and purpose of the statute, and remit the parties to their rights at common law. Pope v. Welsh's Adm'r, 18 Ala. 631." Ferdon v. Dickens, 161 Ala. 181, 195, 196, 49 South. 888, 893.

The same is of course true as to replications and subsequent pleadings, because the Code allows them to be so pleaded.

As before said, of course, a plaintiff may reply generally and specially, and as to the issue raised by the general issue the defendant must prove the plea; but as to the other issues raised by the special replication, they are of necessity confessed, and the defendant need not prove them.

If the plaintiff had by his charges limited the finding of the jury to the issue raised by his general replication to the plea, they should have been given; but the charges were as applicable to the issues raised by the special replications as to the one raised by the general issue. Having confessed that he was not the owner, so far as these issues were concerned, of course, he was not entitled to have the court instruct contrary to his confession.

It therefore results that there was no reversible error in refusing these instructions, and that the judgment must be affirmed.